**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**SANDRA J. LUCKETTE,**

                **Plaintiff,**

     v.                                         **5:04-CV-809**
                                                  **(GLS)**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                **Defendant.**

_____

**APPEARANCES:**                        **OF COUNSEL:**

**FOR THE PLAINTIFF:**

SANDRA J. LUCKETTE
Plaintiff, _Pro Se_
328 East Avenue
East Syracuse, New York 13057

**FOR THE DEFENDANT:**

HON. GLENN T. SUDDABY          WILLIAM H. PEASE
United States Attorney              Assistant U.S. Attorney
PO Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198

**Gary L. Sharpe**
**U.S. District Judge**

**DECISION AND ORDER**

## I. Introduction

*Pro se* claimant Sandra Luckette challenges the denial of disability benefits by the Commissioner of Social Security.  Luckette brings this action pursuant to 42 U.S.C. § 405(g) seeking review of the Commissioner's final determination.  Having reviewed the administrative record, the court affirms the Commissioner's decision.

## II. Procedural History

After Luckette filed for Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) benefits in October 2002, her application was denied, and a hearing was conducted by Administrative Law Judge (ALJ) Alfred Tyminski.  Luckette alleges disability beginning on October 1, 1998 due to tendonitis of the forearms, bilateral carpal tunnel, a pinched nerve in the lower back, high cholesterol and acid reflux.  (Tr. 17).[1] On October 14, 2003, the ALJ issued a decision denying benefits, and that decision became the Commissioner's final determination.

## III. Facts

The evidence in this case is not in dispute, and the court incorporates

---

[1] "(Tr.)" refers to the page of the Administrative Transcript in this case.

the parties' factual recitations.  *See Pl.'s Br. pp. 2-3, Dkt. No. 13; Def.'s Br. pp. 2-8, Dkt. No. 15.*

## IV.  Contentions

Luckette contends that the ALJ's decision is not supported by substantial evidence.[2]  More specifically, she claims that the ALJ: (1) incorrectly determined her Residual Functional Capacity (RFC) and (2) discounted her complaints of disabling pain.  The Commissioner counters that substantial evidence supports the ALJ's disability decision.

## V.  Discussion

### A.  Standard and Scope of Review

A court's review of the Commissioner's final decision is limited to determining whether the correct legal standards were applied and whether substantial evidence supports the decision.  *See Urtz v. Callahan*, 965 F. Supp. 324, 326 (N.D.N.Y. 1997) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Although the Commissioner is ultimately responsible for determining a claimant's eligibility, the actual disability determination is

---

[2]In response to the ALJ's decision, Luckette submitted a letter to the court broadly stating that she could no longer work with a computer and that she suffers from pain.  *See Pl. Ltr. Brief, pp. 2-3, Dkt. No. 13.*  Considering that Luckette is *pro se*, the court will liberally construe these statements as objections to the ALJ's findings based on her RFC and subjective complaints of pain.

3

made by an ALJ. The ALJ's decision is subject to judicial review on appeal. *See* 42 U.S.C. § 405(g). A court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if it appears to be supported by substantial evidence. *See Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's "findings is limited to assessing whether substantial evidence in the record supports those findings." *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see also* 42 U.S.C. § 405(g). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Id*. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must

4

also include that which detracts from its weight." *Id*. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *See  Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The court has authority to reverse with or without remand. *See* 42 U.S.C. § 405(g). Remand is appropriate where there are gaps in the record or further development of the evidence is needed. *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *see also Cutler v. Weinberger*, 516 F.2d 1282, 1287 (2d Cir. 1975) (remand to permit claimant to produce further evidence). Reversal is appropriate, however, when there is "persuasive proof of disability" in the record and "remand for further evidentiary proceedings would serve no purpose." *Parker*, 626 F.2d at 235; *see also Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of HHS*, 705 F.2d 638, 644 (2d Cir. 1983) (reversal without remand for additional evidence particularly appropriate where remand would result in lengthening the "painfully slow process" of determining disability).

## B.  Five-Step Disability Determination

The definition of "disabled" is the same for purposes of receiving

Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) benefits. To be considered disabled, a plaintiff seeking SSDI or SSI benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months[.]" 42 U.S.C. §§ 423(d)(1)(A),1382c(a)(3)(A).[3] The Commissioner uses a five-step process to evaluate SSDI and SSI claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Step One requires the ALJ to determine whether the claimant is presently engaging in substantial gainful activity (SGA). *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If a claimant is engaged in SGA, she will not be considered disabled. If the claimant is

---

[3]In addition, a claimant's

> physical or mental impairment or impairments [must be] of such severity that [s]he is not only unable to do her previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Therefore, a plaintiff must not only carry a medically determinable impairment but an impairment so severe as to prevent her from engaging in any kind of substantial gainful work which exists in the national economy.

6

not engaged in SGA, Step Two requires the ALJ to determine whether the claimant has a severe impairment. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant is found to suffer from a severe impairment, Step Three requires the ALJ to determine whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals a listed impairment, the claimant is presumptively disabled. *See Ferraris*, 728 F.2d at 584. If the claimant is not presumptively disabled, Step Four requires the ALJ to consider whether the claimant's Residual Functional Capacity (RFC) precludes the performance of her past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At Step Five, the ALJ determines whether the claimant can do any other work. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The claimant has the burden of showing that she cannot perform past relevant work. *See Ferraris*, 728 F.2d at 584. However, once the claimant meets that burden, benefits can only be denied by showing, with specific reference to medical evidence, that the claimant can perform some less demanding work. *See White v. Sec'y of HHS*, 910 F.2d 64, 65 (2d Cir.

1990); *Ferraris*, 728 F.2d at 584.  In making this showing, the ALJ must consider the claimant's RFC, age, education, past work experience, and transferability of skills, to determine if the claimant can perform other work existing in the national economy.  *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

In this case, the ALJ found that Luckette satisfied Step One because she had not worked since her alleged onset date of October 1, 1998.  (Tr. 18, 22).  In Step Two, the ALJ determined that Luckette had "severe" impairments due to "the slowing of her right median nerve."  *See id.*  In Step Three, the ALJ determined that her impairments failed to equal an impairment or combination of impairments listed in, or medically equal to, one listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 19, 22).  In Step Four, the ALJ determined that Luckette did not have any limitations in "lifting, carrying, walking, sitting, or standing."  (Tr. 21).  Additionally, the ALJ found that she could "frequently engage in postural activities, reach in all directions, had no environmental limitations, and should avoid repetitive wrist flexion and rotation."  *See id.*  Based on these findings, the ALJ found that Luckette had the ability to perform work at all exertional levels with a

limitation on repetitive wrist movement. (Tr. 22). Therefore, the ALJ concluded that Luckette was not disabled and denied benefits.

## C.   Residual Functional Capacity

Luckette claims that she cannot perform her past relevant work as an office clerk because her wrist pain prevents her from working on a computer. This contention is without merit. At the review level relevant here, the responsibility for determining a claimant's RFC rests with the ALJ. *See* 20 C.F.R. §§ 404.1546(a), 416.946(a). An ALJ's RFC assessment is a medical determination that must be based on probative medical evidence of record. *See Gray v. Chater*, 903 F. Supp. 293, 301 (N.D.N.Y. 1995). An ALJ may not "substitute his own judgment for [a] competent medical opinion." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

Here, Luckette has not provided any medical evidence that she cannot do her past relevant work. As the ALJ noted, although Luckette alleged an onset date of October 1, 1998, the medical evidence is minimal until June 2002. Moreover, between October 1998 and June 2002, she only complained of wrist pain on one occasion, following a weight training session at her gym. (Tr. 18). There are no medical records for years 2000-2001. Luckette's only complaint was acid reflux, which she treated

9

with medication. (Tr. 18).

As the ALJ also noted, no treating physician offered an opinion that Luckette could not perform her former work. In June 2002, Luckette complained of weakness in both arms. (Tr. 18). An examination by Dr. Cristina Topor revealed no pain or swelling around the wrists. *See id.* Instead, Luckette had full range of motion in her shoulders, elbows, wrists and upper extremities, and her reflexes and sensation were intact. *See id.* In 2003, testing continued to be normal. (Tr. 19). She continued to have full range of motion in her upper body. *See id.*

In May 2003, Luckette was examined by orthopedic surgeon Dr. John Mosher, who described her as a "moderately confusing historian," particularly in describing the location of pain. *See id.* Despite Luckette's descriptions of pain in her wrists, Dr. Mosher found no muscle atrophy, strong intrinsic muscle strength, negative Tinel, and full range of upper body motion without complaint. *See id.* Dr. Mosher concluded that Luckette's symptoms did not reflect carpal tunnel. Instead he found evidence of a "small slowing of the median nerve conduction at the carpal tunnel." *See id.*

As the ALJ further noted, the only medical opinion Luckette offers to

support her claim is the opinion of a physician's assistant. More specifically, in June 2003, registered physician's assistant Debra Wolf opined that Luckette had possible carpal tunnel, and should be considered partially disabled until her status could be reevaluated. (Tr. 21). However, as the ALJ noted, physician's assistants are not considered an "acceptable medical source" who can give a medical opinion establishing an impairment. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a). Instead, physician's assistants are considered "other sources" and may provide opinions as to the severity of an impairment. *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).[4] Here, Wolf's findings of "possible carpal tunnel" are contradicted by Dr. Mosher's opinion that Luckette's symptoms did not establish an impairment. Since Dr. Mosher is considered a treating source, his opinion was properly given more weight by the ALJ.

Nevertheless, the ALJ considered Wolf's opinion as part of the overall record. Wolf's assessment of Luckette's RFC is in fact consistent

---

[4]The regulations provide:
Other sources. In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to--
    (1) Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists[.]...
20 C.F.R §§ 404.1513(d)(1), 416.913(d)(1).

11

with the RFC found by the ALJ in his decision. (Tr. 21). Wolf specifically observed that Luckette had "no limitations lifting, carrying, standing, walking or sitting, she could frequently engage in postural activities, has no limitations on reaching in all directions or feeling...and should avoid repetitive wrist flexion and rotation." *See id.* Based on the opinions of Dr. Topor, Dr. Mosher, and Wolf, the ALJ properly determined that there is no evidence indicating that Luckette is disabled from work. Accordingly, the ALJ's determination was based on substantial evidence and must be affirmed.

**D.     Subjective Complaints of Pain**

Luckette also claims that the ALJ did not fully credit her subjective complaints of pain. The Commissioner is obligated to evaluate all of a claimant's "symptoms, including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). Moreover, a plaintiff may suffer some degree of pain as a result of a condition. However, some pain does not automatically translate into disabling pain. *See Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983) ("disability requires more than mere inability to work without

12

pain"). Moreover, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability[.]..." 42 U.S.C. § 423(d)(5)(A).

Here, the ALJ properly considered Luckette's subjective complaints of pain and found them to be meritless. Overall, the ALJ noted that the minimal medical evidence does not support the degree of pain claimed by Luckette. In 2003, Dr. Mosher observed that Luckette's descriptions concerning pain were not consistent with the medical testing, and ultimately her symptoms did not reflect carpal tunnel. (Tr. 20). It was also noted that Luckette did not take prescription medications. *See id.* Instead, she took over-the-counter medications and hot packs to manage her pain. *See id.*

Finally, the ALJ further found that Luckette's daily activities belie a finding of disability. *See id.* For example, she testified that she cares for her ill mother on a daily basis. *See id.* Luckette also testified that she cooks, cleans, goes for walks, rides bikes, swims and drives her car. *See id.* Accordingly, the ALJ's determination was based on substantial evidence and the decision must be affirmed.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED**, that the decision denying benefits is **AFFIRMED**; and it is further

**ORDERED**, that the Clerk of the Court provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

September 11, 2006
Albany, New York

*/s/ Gary L. Sharpe*
United States District Court Judge